IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THE LABORERS DISTRICT COUNCIL CONSTRUCTION INDUSTRY PENSION FUND, et al.,**<br><br>Plaintiffs,<br><br>*v.*<br><br>**MINISCALCO CORPORATION,**<br><br>Defendant. | **CIVIL ACTION**<br><br>**No. 20-5745-KSM** |

**MEMORANDUM**

**MARSTON, J.**                                                                                          **March 16, 2022**

Plaintiffs in this case are the Laborers' District Council Construction Industry Pension Fund ("Pension Fund"), the Laborers' District Council Building and Construction Health and Welfare Fund ("Building & Construction Health and Welfare Fund"), the Laborers' District Council Education and Training Fund ("Training Fund"), the Laborers' District Council Prepaid Legal Fund ("Legal Fund"), the Laborers' District Council of the Metropolitan Area of Philadelphia and Vicinity Laborers' International Union of North America ("Union"), the Laborers' – Employers' Cooperation and Education Trust ("LECET"), the Laborers' District Council Local, Regional and State Health and Safety Benefit Fund ("Health and Safety Fund"), and the Contractors Association of Eastern Pennsylvania ("Contractors Association") (collectively "Plaintiffs"). (*See* Doc. No. 1.) Plaintiffs have moved for default judgment against Defendant Miniscalco Corporation. (Doc. No. 17.) Plaintiffs claim that Minsicalco breached its duties under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, by failing to remit employee contributions to Plaintiffs. (*See generally* Doc. No.

1.) Plaintiffs also claim Miniscalco failed to conduct an audit and breached an October 2019 settlement agreement from a separate case. (*Id.*)

For the reasons discussed below, we grant in part and deny in part Plaintiffs' Motion for Default Judgment.

## I.     Background

In their Complaint, Plaintiffs seek to recover unpaid contributions and damages from Defendants as provided for under ERISA, the Collective Bargaining Agreement ("CBA") between Plaintiffs and Miniscalco, and the trust agreements for the Funds.[1] (*See generally id.*) Under the CBA, Miniscalco agreed to collect deductions from the paychecks of its Union employees and to pay those deductions to Plaintiffs. (*Id.* at ¶ 16 ("The CBA contains provisions whereby [Defendant] was required to deduct designated amounts for Union working dues and PAC and make designated contributions to the . . . Pension Fund, Health and Welfare Fund, Education and Training Fund, Prepaid Legal Fund, and Health and Safety Benefit Fund on behalf of all employees covered by the [CBA] and was required to pay such amounts to the Union and Funds.").) In addition, Miniscalco agreed to be bound by trust agreements for the Funds. (*Id.* at ¶ 15.) As pled in the Complaint, under the trust agreements or CBA, Miniscalco must, upon request, produce all books and records deemed necessary to conduct an audit of Miniscalco's records related to the obligations that it owes the Funds. (*Id.* at ¶ 17(c).) Miniscalco also agreed to file monthly remittance reports, detailing those payments. (*Id.* at ¶ 17(b).) Further, Miniscalco agreed to pay liquidated damages and all costs related to litigation as a consequence of its failure to comply with its contractual obligations. (*Id.* at ¶ 17(d); *see also id.* at ¶ 19.)

---

[1] "Funds" refers to the Plaintiff Funds identified—i.e., the Pension Fund, the Building & Construction Health and Welfare Fund, the Training Fund, the Legal Fund, Health and Safety Fund.

Last, Miniscalco agreed to pay interest on delinquent contributions "at the prime lending rate plus two percent." (*Id.* at ¶ 17(e).)

Plaintiffs filed this action on November 17, 2020. In Count I, all Plaintiffs seek an audit and accounting under the CBA and trust agreements, so that they can accurately assess and calculate damages suffered from May 1, 2019 to the present. In Count II, Plaintiffs seek judgment against Miniscalco for the amount of contributions found due to them under the CBA and trust agreements, plus costs and other fees. In Count III, Plaintiffs seek judgment against Miniscalco for the amount of contributions found due to them under § 1145 of ERISA. In Count IV, Plaintiffs allege that Miniscalco breached a settlement agreement it entered into in October 2019 in *The Laborers' District Council Construction Industry Pension Fund v. Miniscalco Corporation* (Case No. 18cv3607) and seek damages for that breach. Service was effectuated on Miniscalco on May 12, 2021.[2] (Doc. No. 15.) When Miniscalco failed to timely respond to the Complaint, the Clerk of the Court entered default against it. And on July 17, 2021, Plaintiffs moved for default judgment. (*See generally* Doc. No. 17.)

Miniscalco has not responded to the Complaint. The Court held a default judgment hearing on October 13, 2021. (*See* Doc. Nos. 23, 24.) Despite being served with notice of the hearing (*see* Doc. No. 21), no representative for Miniscalco attended the hearing (*see* Oct. 31, 2022 Hr'g Tr. ("Hr'g Tr.") at 2:17–19).

---

[2] Plaintiffs filed a motion for alternative service on January 4, 2021 (Doc. No. 4), which this Court denied on January 12 (Doc. Nos. 5–6). On February 16, Plaintiffs filed an amended motion for alternative service (Doc. No. 9), which the Court also denied (Doc. No. 11). On May 6, Plaintiffs filed another motion for alternative service (Doc. No. 13), which the Court granted on May 10 (Doc. No. 15).

3

## II.     *Legal Standard*

Under Rule 55 of the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The clerk may then enter default judgment if "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1). In all other cases, the plaintiff must apply to the court for default judgment. Fed. R. Civ. P. 55(b)(2). "A default judgment must not differ in kind from, or exceed, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

Where a party moves for default judgment, the court evaluates the following three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *see also, e.g.*, *Int'l Union of Operating Eng'rs v. N. Abbonizio Contractors*, 134 F. Supp.3d 862, 865 (E.D. Pa. 2015). In evaluating these factors, the court accepts all factual allegations in the complaint as true. *Serv. Emps. Int'l Union v. ShamrockClean Inc.*, 325 F. Supp. 3d 631, 635 (E.D. Pa 2018). However, "a party in default does not admit mere conclusions of law," so before considering the *Chamberlain* factors, we begin by considering "whether the unchallenged facts constitute a legitimate cause of action." *Id.* (quotation marks omitted).

## III.    *Plaintiffs Have Stated Claims Under ERISA and for Breach of Contract*

Here, Plaintiffs claim that Miniscalco violated § 515 of ERISA and breached its contracts with Plaintiffs.

4

### A.    *Section 515 of ERISA*

Section 515 of ERISA mandates that employers make contributions to a multiemployer plan as required by the terms of a CBA.  29 U.S.C. § 1145.  If an employer fails to make their required contributions, a plan fiduciary has the right to seek judgment against the employer.  *Id.* § 1132(g)(2); *see e.g.*, *Int'l Union of Operating Eng'rs*, 134 F. Supp.3d at 865 ("ERISA provides that an employer obligated to make contributions to a multiemployer plan under the terms of a CBA must make those contributions in accordance with the terms and conditions of the agreement. . . .  A plan fiduciary is permitted to sue an employer who fails to make such required contributions." (cleaned up)).

In Count I of the Complaint, Plaintiffs allege that Defendants failed to make contributions to the Funds and Union under the terms of the CBA or the trust agreements.  Under the parties' CBA and/or trust agreements, Miniscalco agreed:

> (a) to make full and timely payments on a monthly basis to the Funds, Union and Industry Advancement Program as required by the Labor contracts;
>
> (b) to file monthly remittance reports with the Funds detailing all employees or work for which contributions were required under the Labor Contract;
>
> (c) to produce upon request by the Funds, individually or jointly, all books and records deemed necessary to conduct an audit of the Company's records concerning its obligations to the Funds and Union;
>
> (d) to pay liquidated damages and all costs of litigation, including attorneys [sic] fees, expended by the Funds and Union to collect any amounts due as a consequence of the Company's failure to comply with its contractual obligations described in subparagraphs (a), (b), and (c) above; and
>
> (e) to make payment of interest at the prime lending rate plus two percent on all contributions paid to the Funds after the date upon which they were due.

(Doc. No. 1 at ¶ 17(a)–(e).)  Plaintiffs allege that Miniscalco "failed to make benefit fund contributions in an unknown amount for work performed May 1, 2020, through the present."[3] (*Id.* at ¶ 20.)

These allegations show that under the CBA and/or trust agreements, Miniscalco was required to contribute to several multiemployer plans, and it failed to do so.  Therefore, we find that Plaintiffs have stated a claim for violations of § 515 of ERISA.[4]

### B.     *Breach of Contract*

In Count VI, Plaintiffs allege that Miniscalco breached a settlement agreement it entered into with Plaintiffs in October 2019 in a prior action. (Doc. No. 1 at 10.)  Under the terms of that agreement, Miniscalco agreed to pay Plaintiffs $82,879.29.[5] (Doc. No. 1-1 at 3 ¶ 1.)  Miniscalco also agreed to pay "interest in accordance with the collective bargaining agreement and

---

[3] Plaintiffs claim that Miniscalco has failed to provide the books and records needed to plead the precise amount that Miniscalco owes in employee benefit contributions under Counts II and III.  (*See id.* at ¶¶ 25–31; *see also* Hr'g Tr. at 10:21–25 ("The difficult thing for the fund[s] is we don't have the information that we need to be able to precisely calculate the amount of fringe benefit contributions that are due.  Again, that is because of the culpable conduct of Miniscalco and just completely ignoring us and their obligations to their employees and to the fund[s], as a party to that agreement."); *id.* at 17:20–18:6 ("Q: Is it of concern to the fund when a contractor is not either remitting benefits or remitting at least reports of hours worked?  A [Kevin Gale, Collections Manager for the Funds]: Yes, because, unfortunately, we don't know what the amount, how many employees are working and what that could be . . ."); Doc. No. 19-1 at 2 ("Despite months' long efforts to schedule an appointment to review its records, Miniscalco refused to respond or otherwise cooperate with the Funds' auditors.  Further, Miniscalco has failed to file monthly reports reflecting hours and individuals entitled to benefits . . .").)

[4] For similar reasons, the Court also finds that Plaintiffs have stated a claim for breach of contract under the CBA and/or trust agreements.  *See Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) ("It is well-established that three elements are necessary to plead a cause of action for breach of contract:  (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and (3) resultant damages.").  Here, Plaintiffs claim that they were damaged when Miniscalco failed to pay the employee benefit contributions they were required to make under the terms of the CBA and/or trust agreements.

[5] That figure represents:  $14,288.00 (unpaid contributions from July 1, 2016 to March 31, 2018); $48,864.00 (unpaid contributions from April 1, 2018 to April 30, 2019); $2,927.24 (accrued interest); $15,000 (legal fees); and $1,800 audit fee.  (Doc. No. 1-1 at 3 ¶ 1.)

applicable law." (*Id.*) Plaintiffs have represented that Miniscalco fulfilled its obligations under that agreement, except that it still owes a final interest payment of $4,299.18. (Doc. No. 1 at ¶ 42; Doc. No. 19-1 at 2; Doc. No. 17-1 at ¶ 4; *id.* at Exs. 1 & 2.)

As noted *supra* n.3, to plead a cause of action for breach of contract, a plaintiff must allege: "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C.*, 137 A.3d at 1258. Here, Plaintiffs have pled that Miniscalco breached their settlement agreement by failing to pay the interest owed and that it has been damaged as a result. Therefore, we find that Plaintiffs have stated a claim for breach of contract.

### IV.   *The Chamberlain Factors Favor Entry of Default Judgment.*

Because Plaintiffs have established claims under ERISA and for breach of contract, the Court now considers whether default judgment on these claims, (Counts II, III, and IV), is warranted under the *Chamberlain* factors.

First, the Court finds that Plaintiffs will be prejudiced if default judgment is denied because Plaintiffs are not receiving the monetary contributions owed to them under the CBA or trust agreements, nor have they received the interest owed to them under the 2019 settlement agreement. *See Trs. of the Nat'l Elevator Indus. Pension Plan*, 2011 WL 5341008 at *3 ("Clearly, Plaintiffs will suffer prejudice if this Court denies their motion for default judgment; Plaintiffs are not receiving payments owed them."); *Serv. Emps. Int'l Union*, 325 F. Supp. 3d at 637 ("First, Plaintiffs will certainly be prejudiced if default judgment is denied, as Plaintiffs have not yet received the withdrawal liability that they are owed.").

Second, Miniscalco appears to have no litigable defense. Miniscalco has not filed a responsive pleading despite having been served by Plaintiffs. The Court may also "presume that

an absent defendant who has failed to answer has no meritorious defense . . . because '[i]t is not the court's responsibility to research the law and construct the parties' arguments for them.'" *Acosta v. Schwab*, No. 5:18-CV-3544, 2019 WL 7046916, at *8 (E.D. Pa. Dec. 20, 2019).

Finally, the Court finds that Miniscalco's delay is due to its own culpable conduct.[6] *See Serv. Emps. Int'l Union*, 325 F. Supp. 3d at 637 (explaining that "culpable conduct" refers to conduct "taken willfully or in bad faith," and finding that "Defendant's failure to respond to the complaint and failure to attend the hearing were both 'willful,' in the sense that Defendant accepted service of the complaint and the order setting the hearing and therefore was aware of the complaint and the hearing" but still failed to appear or otherwise respond to the complaint).

## V.  Relief

Because Plaintiffs are entitled to default judgment, the Court must now determine the relief to be awarded. Under ERISA, Plaintiffs are awarded the following in actions involving delinquent contributions:

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of—

---

[6] Ultimately, the Court granted Plaintiffs' third motion for alternative service, which included service by email to Henry Miniscalco. (*See* Doc. Nos. 13–14; Doc. No. 9 ("Plaintiffs' counsel has continued to send all correspondence and orders associated with this case to the last known email address for Henry Miniscalco and/or Miniscalco Construction Co., haminiscalco@miniscalcorp.com."); Doc. No. 13 at ¶ 17 (noting that a prior known email address for Henry Miniscalco was consistent with a P.O. box for Henry Anthony Miniscalco, given the middle initial "a").) The Court notes that, in July 2020, Henry Miniscalco personally hand delivered a payment under the 2019 settlement agreement to Ms. Goldstein's prior law firm and that he had prior knowledge of her contact information and that of the Funds' Collections Manager, Mr. Gale. (Doc. No. 19 at ¶ 10.) In addition, the terms of the settlement agreement required the parties to inform one another of any change in contact information. (*See* Doc. No. 1-1 at 6–7 ¶ 9.) After this, Miniscalco's legal representation changed from Post & Schell to Robert Birch, Esquire. (Doc. No. 19 at ¶ 8.) However, when Plaintiffs' counsel reached out to Henry Miniscalco's prior counsel, Robert Birch, to serve the complaint, she was informed that Mr. Birch was no longer representing Miniscalco and could not accept service on the company's behalf. (Doc. No. 4 at ¶ 5; Doc. No. 19 at ¶ 9.)

>     (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). The Court may rely on affidavits and other documented evidence to award the appropriate default judgment amount. *Pesotski v. Summa & Iezzi, Inc.*, No. 1:17-CV-00221, 2017 WL 3310951, at *4 (M.D. Pa. Aug. 3, 2017) (concluding that the plaintiffs' affidavits, copies of monthly remittance forms, and copies of notices sent to defendant "adequately establish the requested sum"). And judgment may be entered in an amount different from that requested in the complaint, so long as it is not different in kind from the requested relief or in excess of the requested amount. Fed. R. Civ. P. 54(c).

In their motion, Plaintiffs seek a court order requiring Miniscalco to produce its books and records within fifteen days, as well as judgment against Defendants for delinquent contributions in the amount determined by the audit, along with interest, attorney's fees, audit fees, and costs. (Doc. No. 17 at 3–4.)

The Court concludes that Plaintiffs are entitled to an audit and/or accounting. "ERISA instructs that a court may grant a plan fiduciary 'legal or equitable relief as [it] deems appropriate.'" *Int'l Union of Operating Eng'rs*, 134 F. Supp. 3d at 867 (quoting 29 U.S.C. § 1132(g)(2)(E)). "A court-ordered audit [is] a permissible form of equitable relief when the trust agreements assign[] the trustees the power to demand and examine employer records, and the corresponding responsibility to preserve and maintain trust assets." *Id.* (citing *Central States, Se. & Sw. Asia Pension Fund v. Central Transport, Inc.*, 472 U.S. 559 (1985)). Here, Plaintiffs

represented that the CBA and/or trust agreements required Miniscalco to produce, upon the Funds' request, all books and records necessary to conduct an audit. (Doc. No. 1 at ¶ 17(c).) In addition, Plaintiffs have shown that access to Miniscalco's financial records is needed to determine what contributions are unpaid and that their auditors' attempts to contact Miniscalco were unsuccessful. (*See* Hr'g Tr. at 8:8–18 ("So the laborers at no time know exactly who's working and how many hours they're working. And as a result, it's a self-reporting mechanism and so we rely upon the employers to remit contributions and reports of hours. And for that reason, our audit function becomes terribly important because we need to verify that the contractors have properly reported the hours."); *id.* at 10:21–11:5 ("The difficult thing for the funds is we don't have the information that we need to be able to precisely calculate the amount of fringe benefits that are due. Again, that is because of the culpable conduct of Miniscalco and just completely ignoring us and their obligations to their employees and to the fund[.]").) *See Int'l Union of Operating Eng'rs*, 134 F. Supp. 3d at 867 ("I am satisfied that Plaintiffs have presented sufficient evidence demonstrating that access to Defendant's financial records is necessary to determine whether any contributions remains remain unpaid, and that their attempts to contact Defendant and arrange an audit have been ignored. I therefore grant Plaintiffs their requested relief and order Defendant to submit to an audit.").

During the hearing, Plaintiffs also asked to be permitted to have judgment entered now in the amount of $66,588.00—an estimate that Kevin Gale, the Collection Manager for the Benefit Fund, reached—in the event that Miniscalco is not cooperative with the audit. (*See* Pls.' Ex. 4; Hr'g Tr. at 13:16–20 ("[W]e would ask to be permitted to have judgment entered in the amount of the estimate to . . . the best of our ability based on the data . . . . [I]t's the $66,000 figure."); *id.* at 18:10–11 (Mr. Gale's testimony that when calculating an estimate what "is due from a

company," they "go back about ten months to 12 months, find the average number of employees reported on, and then do a calculation for each month."); *see also id.* at 24:13–19 ("This is just an estimate because we have no contributions or reports, whether they got paid or not paid, and we haven't done a payroll audit to figure out if there is anything actually due."); *id.* at 25:1–10 (Mr. Gale testifying that he was aware that somebody was working for the company as of early 2020 and that Miniscalco may not owe the $66,000 as that figure was the "estimate of what the prior work history was").) Plaintiffs also filed supplemental briefing to support their request. (Doc. No. 26.)

At this time, the Court declines to enter judgment in the amount of estimated unpaid contributions.[7] The main case on which Plaintiffs rely occurred in a different posture. *See Laborers' District Council Constr. Indus. Pension Fund v. Terra Env't Contractors*, Civil Action No. 05-cv-02625, 2007 WL 2492453, at *5 (E.D. Pa. Aug. 16, 2007) (allowing the funds to estimate the contributions owed to them where the defendant "failed to rebut the Funds' evidence of covered work presented at *trial*" and "failed to maintain adequate records" (emphasis added)); *see also Composition Roofers Union Local No. 30 Welfare Tr. Fund v. L.A. Kennedy, Inc.*, No. CIV.A. 93-1558, 1996 WL 220975, at *6–7 (E.D. Pa. May 2, 1996) (noting that "[i]f an employer fails to maintain adequate records and fails to come forward with other evidence of covered work, then the employee benefit funds are entitled to approximate the contributions owed to them" and ordering a hearing to resolve the dispute between the parties where the funds

---

[7] The Court is especially concerned to enter judgment in the amount of estimated contributions, which involves using records from the last ten to twelve months, given that the timing of the COVID-19 pandemic could have impacted any work that Miniscalco did in 2020 and thereby could drastically alter the amount of hours employees worked or the number of employees who were employed by Miniscalco. (*See* Hr'g Tr. at 12:20–13:1 ("[Mr. Gale]: The last time [Henry Miniscalco] had anybody working for him was early 2020. The Court: Right before COVID? Mr. Gale: Probably during COVID. Beginning of COVID. Most of the jobs were unfortunately shut down."). This is not a fair comparison.

11

submitted an affidavit from the accountant who performed the audit in support of contributions due to the funds and the defendant contested that amount and argued that the funds' auditors used an incorrect methodology and included the work-time of non-union members).

Plaintiffs also seek judgment in the amount of $4,299.18 for the unpaid interest from the 2019 agreement.  (Doc. No. 17 at 4.)  The Court finds that Plaintiffs are entitled to this amount.

Plaintiffs also seek attorney's fees and costs pursuant to 29 U.S.C. §1132(g)(2)(D).  This fee request is supported by an affidavit from Plaintiffs' counsel, Nancy L. Goldstein, which shows the hours worked by counsel throughout this litigation.  (Doc. No. 19.)  Ms. Goldstein is an attorney at Swartz Campbell, LLC, and her hourly rate in this case was $235[8] (*id.*), which is reasonable and consistent with the market rate in the community — Philadelphia.  *See Trs. of Nat'l Elec. Benefit Fund v. Mirarchi Bros., Inc.*, Civil Action No. 21-4399-KSM, 2022 WL 221610, at *6 (E.D. Pa. Jan. 24, 2022) (finding $445 was a reasonable hourly rate for defense counsel in ERISA recovery action); *Carpenters Health & Welfare Fund of Philadelphia & Vicinity v. Reyes*, No. CV 17-05107, 2018 WL 3437212, at *4 (E.D. Pa. July 16, 2018) (granting plaintiffs attorneys' fees and finding an hourly rate of $340 reasonable based on the prevailing market rate in the community).  She worked 76.8 hours, investigating Miniscalco's default under the 2019 settlement agreement, preparing pleadings, investigating and preparing pleadings related to service, and communicating with the client, and seeks a total of $18,048.00 in attorney's fees and $1,361.30 in costs.  (Doc. No. 19 at ¶¶ 14–15.)

---

[8] Ms. Goldstein has worked on this matter while working at Swartz Campbell and when she was at her prior law firm, Hamburg & Golden P.C.  (Doc. No. 19 at ¶¶ 3–4.)  While at Hamburg & Golden, some invoices were erroneously calculated at the rate of $330; however, Hamburg & Golden returned the amount that was overpaid to the Funds.  (*Id.* at ¶ 5.)

The Court finds in this case that Plaintiffs' requested amount of $18,048 in attorney's fees is unreasonable. *Contra Int'l Brotherhood of Electrical Workers Union No. 98 Health & Welfare Fund v. D'Narpo Elec., LLC*, Civil Action No. 21-1923-KSM, 2022 WL 742735, at *6 (E.D. Pa. Mar. 10, 2022) (granting $8,295 in attorney's fees in ERISA default judgment action where the attorney worked 21 hours); *Bricklayers & Allied Craftworkers Loc. 1 of PA/DE v. WaterControl Servs., Inc.*, No. CIV.A. 09-3935, 2012 WL 3104437, at *7 (E.D. Pa. July 30, 2012) (approving attorney's fees in a motion for default judgment ERISA action where counsel spent 9.7 hours on the matter and charged $175.00 per hour). In particular, the Court finds that the $10,222.50 that Ms. Goldstein seeks for "investigation and pleadings related to service" (*see* Doc. No. 19 at ¶ 14) is not reasonable. Although the Court recognizes that effectuating service in this case ultimately proved to be difficult, and did require a motion for alternative service, Plaintiffs' counsel's first two motions for alternative service failed to comply with the governing case law, leading to their denial. *See Laborers' District Council Constr. Indus. Pension Fund v. Miniscalco Corp.*, Civil Action No. 2:20-cv-5745-KSM, 2021 WL 121136, at *3–5 (E.D. Pa. Jan. 12, 2021) (detailing the limited facts before the Court that prevented the Court from finding that Plaintiffs had made a good faith effort to locate and serve Miniscalco and emphasizing that "this Court and others in this District have found a lack of good faith effort in cases where the plaintiffs did far more to locate and serve the defendants than Plaintiffs have done here"). (*See also* Doc. No. 11 (denying Plaintiffs' amended motion for alternative service and noting that in its prior Memorandum, "the Court outlined the legal standard and the numerous ways in which Plaintiffs fell short of demonstrating that they had made a good faith effort" and "provided guidance on what constitutes a good faith effort" but that Plaintiffs had still failed to meet that standard).) Had Plaintiffs' counsel adhered to the governing case law, as opposed to filing

multiple motions for alternative service, fewer hours would have been expended. For these reasons, the Court denies Plaintiffs' request for the $10,222.50, as counsel has failed to establish that Plaintiffs are entitled to that sum.[9] However, the Court finds that Plaintiffs are entitled to the remaining $7,825.50 in attorney's fees and $1,361.30 in costs (for a total of $9,186.80 in attorney's fees and costs).

## VI. Conclusion

Because Plaintiffs have stated claims under ERISA and for breach of contract, and the *Chamberlain* factors weigh in favor of granting default judgment, Plaintiffs' motion is granted and judgment entered in favor of Plaintiffs and against Miniscalco as follows:

1. $9,186.80 in attorney's fees and costs, pursuant to the CBA and 29 U.S.C. § 1132(g)(2)(D); and

2. $4,299.18 in unpaid interest pursuant to the 2019 settlement agreement.

In addition, Miniscalco shall submit to an accounting to determine the amount of benefit fund contributions owed by Miniscalco. To that end, Miniscalco shall produce the following documents to Plaintiffs' accountant, Perry N. Blackman, CPA, within thirty days of the date of this Memorandum:

1. Copies of all contribution reports pertaining to May 1, 2020 through the present[10];

---

[9] Counsel did not attach to Plaintiffs' Memorandum in Support of Claim for Attorneys' Fees all of the invoices that relate to alternative service, so the Court is unable to determine the proper amount to deduct. (*See* Doc. No. 19.) Several of the invoices attached to the motion for default judgment did not provide the Court assistance in calculating the correct amount either, as they reflect the incorrect $330 hourly rate. (*See, e.g.*, Doc. No. 17-1 at 30, 32).)

[10] Plaintiffs' counsel uses different dates in different pleadings. (*Compare* Doc. No. 17 at 1–2 ¶ 4(a)–(j) (proposed order on default judgment motion listing dates as May 1, 2019 through the present), *and* Doc. No. 1 at ¶ 31 ("seek[ing] access to payroll withholding records from May 1, 2019 through the present"), *with* Doc. No. 17 at 3–4 ¶ 3(a)–(j) (default judgment motion listing dates as May 1, 2020 through the present).) The Court uses the May 1, 2020 date, as set forth in Plaintiffs' Motion for Default Judgment. (Doc. No. 17 at 3–4.) To the extent Plaintiffs' counsel argues for the use of the May 1, 2019 date, the Court finds this date is inconsistent given the terms of the parties' prior settlement agreement (specifically referencing May 1, 2019 through July 31, 2019). (*See* Doc. No. 17-1 at 6 ¶ 1; Doc. No. 1-1 at 3 ¶ 1 ("In

2. Cancelled checks as proof of payment;

3. Individual payroll cards or payroll books pertaining to May 1, 2020 through the present;

4. Weekly payroll summary sheets pertaining to May 1, 2020 through the present;

5. Job records pertaining to May 1, 2020 through the present;

6. Time cards and social security reports pertaining to May 1, 2020 through the present;

7. Unemployment compensation reports pertaining to May 1, 2020 through the present;

8. Cash receipts and disbursement journals pertaining to May 1, 2020 through the present;

9. Forms W-2 and 1099 for May 1, 2020 through the present; and

10. Personnel records confirming date of hire and termination (where applicable).

An appropriate Order follows.

---

addition Miniscalco agrees to pay any and all unpaid benefit fund contributions applicable to work performed May 1, 2019 through July 31, 2019 and interest in accordance with the collective bargaining agreement and applicable law.").)