IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE LABORERS DISTRICT COUNCIL CONSTRUCTION INDUSTRY PENSION FUND, et al.,<br><br>Plaintiffs,<br><br>*v.*<br><br>MINISCALCO CORPORATION,<br><br>Defendant. | CIVIL ACTION<br><br>No. 20-5745-KSM |

**MEMORANDUM**

**MARSTON, J.**                                                                                        **April 18, 2023**

Plaintiffs the Laborers' District Council Construction Industry Pension Fund ("Pension Fund"), the Laborers' District Council Building and Construction Health and Welfare Fund ("Building & Construction Health and Welfare Fund"), the Laborers' District Council Education and Training Fund ("Training Fund"), the Laborers' District Council Prepaid Legal Fund ("Legal Fund"), the Laborers' District Council of the Metropolitan Area of Philadelphia and Vicinity Laborers' International Union of North America ("Union"), the Laborers' – Employers' Cooperation and Education Trust ("LECET"), the Laborers' District Council Local, Regional and State Health and Safety Benefit Fund ("Health and Safety Fund"), and the Contractors Association of Eastern Pennsylvania ("Contractors Association") (collectively "Plaintiffs") have sued Defendant Miniscalco Corporation for allegedly breaching its duties under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, by failing to remit employee contributions to Plaintiffs.  (*See* Doc. No. 1.)  Defendant failed to respond to the Complaint and did not otherwise appear.  On July 22, 2021, Plaintiffs moved for default

judgment against Defendant Miniscalco Corporation (Doc. No. 17), which this Court granted in part and denied in part on March 16, 2022 (Doc. Nos. 27, 28).  Nearly a year later, on February 22, 2023, counsel for Defendant entered an appearance on behalf of the corporation (Doc. No. 47) and on March 7, Defendant filed a Motion to Vacate the Default Judgment (Doc. No. 49).

For the reasons discussed below, the Court denies Defendant's motion.

## I.     Background

On August 26, 2016, Henry Miniscalco, owner of Defendant Miniscalco Corporation, signed a Collective Bargaining Agreement ("CBA") with the Laborers' District Council.  (Doc. No. 49-1 at 2; Doc. No. 52-1 at 3.)

On November 17, 2020, Plaintiffs sued Defendant, alleging that Defendant failed to make benefit fund contributions for work performed from May 1, 2020 to present, in contravention of the CBA and in violation of § 515 of ERISA.  (*See, e,g.*, Doc. No. 1 at ¶¶ 16–17, 20, 22, 34–35; *see also* Doc. No. 27 at n.10 (noting that "Plaintiffs' counsel uses different dates in different pleadings" and explaining reasoning for using the May 1, 2020 date").)  In addition, Plaintiffs alleged that Defendant breached a settlement agreement that Plaintiffs and Defendant had entered in 2019 to resolve a different dispute (which also involved unpaid benefit fund contributions) by failing to pay interest of $4,299.18.  (*Id.* at ¶ 21; Doc. No. 1-1.)  Defendant did not respond to the Complaint, and no representative entered an appearance on behalf of Defendant either.

On June 15, 2021, at Plaintiffs' request, the Clerk of Court entered default.  On July 22, Plaintiffs filed a motion for default judgment.  (Doc. No. 17.)  The Court held a hearing on the default judgment motion on October 13, 2021.  (Doc. No. 23.)  No representative for Defendant attended the hearing.

On March 16, 2022, the Court granted in part and denied in part Plaintiffs' motion for default judgment. (Doc. Nos. 27, 28.) The Court found that Plaintiffs stated claims for violations of ERISA and breach of contract of both the CBA and the 2019 settlement agreement. (Doc. No. 27 at 4–7 & n.4.) The Court also concluded that the *Chamberlain* factors favored entry of default judgment. (*See id.* at 7–8.) As to relief, the Court found that Plaintiffs were entitled to an audit/accounting to determine the amount of benefit fund contributions owed by Defendant but declined to enter judgment in the amount of $66,588.00, which was an estimate of the unpaid contributions as calculated by the Collection Manager for the Benefit Fund, Kevin Gale. (*Id.* at 9–11; *see also id.* at 11 (At this time, the Court declines to enter judgment in the amount of estimated unpaid contributions.").) However, the Court determined that the Plaintiffs were entitled to $4,299.18 for the unpaid interest from the 2019 and for some (but not all) of the attorney's fees requested. (*See id.* at 12–13.) Specifically, the Court awarded Plaintiffs $9,186.80 in attorney's fees and costs. (*Id.* at 14.) With respect to the accounting, the Court ordered Defendant to produce a number of documents, including, among others, "copies of all contribution reports pertaining to May 1, 2020 through the present," "cancelled checks as proof of payment," "individual payroll cards or payroll books pertaining to May 1, 2020 through the present," and "Forms W-2 and 1099 for May 1, 2020 through the present." (*Id.* at 14–15; *see also* Doc. No. 28.)

On September 27, 2022, Plaintiffs filed a motion for sanctions, arguing that sanctions were warranted because Mr. Miniscalco "sent a self-selected subset of the documents rather than producing the full payroll documents" required by the Court's March 16, 2022 Order. (*See* Doc. No. 29 (arguing that "Henry Minsicalco and Miniscalco Corporation should be adjudged to be in contempt of this Court's March 16, 2022 order").) On October 13, the Court held a show cause

3

hearing on the motion. (Doc. No. 33.) The Court requested additional information from Plaintiffs and did not rule on the motion at the time. On November 22, Plaintiffs supplemented the motion. (Doc. No. 35.)

On November 21, Plaintiffs filed a motion to amend/correct the default judgment.[1] (Doc. No. 34.) Plaintiffs argued that remittance reports showed that Defendant owed $68,593.31 in contributions for work performed during August 2019, September 2019, November 2019, December 2019, January 2020, February 2020, March 2020, April 2020, May 2020, June 2020, July 2020, June 2021, and July 2021, and that they had only discovered these after default judgment was entered. (*See id.*) Plaintiffs also sought interest on the unpaid contributions and additional attorneys' fees and costs. Last, Plaintiffs contended that they now needed the audit to cover May 1, 2019 to the present (as opposed to the previously ordered audit for May 1, 2020 to the present). (*Id.* at 3.) The Court held another show cause hearing on January 3, 2023. (Doc. No. 43.)

Mr. Miniscalco appeared at the January 3 hearing and stated that he had believed Robert Birch, Esquire was representing him in this matter. (*See* Doc. No. 42 ("Henry Miniscalco having appeared at today's show cause hearing and having believed that his attorney, Robert Birch, Esquire, would appear on his corporation's behalf . . .").) The Court ordered Mr. Miniscalco to obtain counsel for Defendant by February 3 and for the parties to provide a joint status update by that date as well. (*Id.*) No counsel entered an appearance for Defendant by the deadline. On February 14, the Court ordered Mr. Minsicalco to "show good cause for why the Court should not sanction him and/or hold him contempt for his failure to abide by the Court's order to secure

---

[1] Plaintiffs' motion to amend remains under advisement at this time.

4

counsel for his corporation, Defendant Miniscalco Corporation" and scheduled a show cause hearing for February 23.  (Doc. No. 26.)  On February 22, Robert Birch, Esquire entered his appearance on behalf of Defendant, and the Court cancelled the show cause hearing and scheduled a status hearing for March 8.  (Doc. Nos. 47, 48.)  Following the status hearing, the Court denied Plaintiffs' motion for sanctions, without prejudice.  (Doc. No. 51.)

On March 7 (the day before the hearing), Defendant filed a motion to vacate the default judgment.  (Doc. No. 49.)  Following the hearing, Defendant filed a memorandum of law in support of its motion (Doc. No. 52) and Plaintiffs filed their response (Doc. No. 53.)

In its motion, Defendant argues that the Court should set aside default because Plaintiffs will not be prejudiced, Defendant had a meritorious defense, and Defendant did not act in bad faith.  (*See* Doc. No. 52.)  The bulk of Defendant's motion is its argument that it has a meritorious defense because there was no operative contract between the parties in 2019 and 2020.  (*See id*. at 5–9.)  Namely, Defendant argues that the CBA was terminated on April 30, 2017, the date it was set to expire, and that Defendant did not need to affirmatively do anything to terminate the agreement.  (*Id.*)  Plaintiffs disagree, arguing that the CBA remained valid and continued year-to-year because neither party provided notice of their intent to terminate the CBA or alter its terms.  (*See* Doc. No. 53-1.)

As is relevant here, the CBA contained a termination clause, which provided:

> This agreement shall be binding upon both parties hereunto, as well as upon their respective principals, and upon the respective successors and assign of said parties and their principals, for the period beginning May 1, 2014 and ending at midnight of April 30, 2017, without change or modification except as hereinafter specifically provided, and thereafter from year to year, unless each party hereto shall notify the other in writing at least ninety (90) days prior to the expiration of the term, or of any extended term, of this Agreement of an intention to change or amend any of the provisions of this Agreement upon expiration of its term or of any extended

5

> term thereof. Such notice shall be served by certified mail post marked not less than ninety (90) days prior to such expiration date.
>
> Should either party give notice to the other as aforesaid, then, within thirty (30) days after the mailing of said notice, representatives of the Association and of the LDC shall meet to discuss, negotiate, and agree upon such changes. If no agreement as to such changes is arrived at before the expiration of the term, of this Agreement, then the whole of this Agreement shall be considered terminated upon the expiration of the term, or of the then current extension of the term of this Agreement, unless extended by mutual agreement in writing of the parties hereto.
>
> This agreement shall expire April 30, 2017.

(Doc. No. 52-1 at 2, Article XVI, Section 1 – Termination of Agreement.)

**II.     Legal Standard**

Under Federal Rule of Civil Procedure 55(c), a court "may set aside an entry of default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c).  In turn, Rule 60(b) provides that a court "may relieve a party . . . from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1).  A motion filed under Rule 60(b)(1) must be made "no more than a year after the entry of judgment or order." Fed. R. Civ. P. 60(c); *see also Mrs. Ressler's Food Prods. v. KZY Logistics LLC*, 675 F. App'x 136, 139 (3d Cir. 2017) ("If the movant files its motion within one year of the entry of a default judgment, Rule 60(b)(1) permits the court to grant the motion if there had been 'mistake, inadvertence, surprise, or excusable neglect' on the defendant's part.").  "In addition, Rule 60(b)(6) provides a catchall for vacating a judgment without time limit 'for any other reason that justifies relief.'" *Mrs. Ressler's Food Prods.*, 675 F. App'x at 139.

In determining whether to set aside or vacate a default judgment, a court must consider: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; (3) whether the default was the result of the defendant's culpable conduct; and (4) whether

alternative sanctions would be effective. *See, e.g.*, *id.* at 139–40; *Crespo v. Masorti & Sullivan, P.C.*, 3:20-CV-00101-CRE, 2021 WL 2550649, at *2 (W.D. Pa. June 22, 2021). Although a court must balance all four factors, the most key factor is whether the defendant has alleged a meritorious defense. *See Sunoco, Inc. (R&M) v. Global Recycling & Demolition, LLC*, 300 F.R.D. 253, 256–57 (E.D. Pa. 2014); *Crespo*, 2021 WL 2550649, at *3.

"As a general matter, [the Third Circuit] does not favor default judgments and in a close case, doubts should be resolved in favor of setting aside the default and reaching the merits." *Zawadski de Bueno v. Bueno Castro*, 822 F.2d 416 (3d Cir. 1987); *see also Mrs. Ressler's Food Prods.,*, 675 F. App'x at 137 ("We consistently have emphasized the extreme nature of a default judgment, and repeatedly have stated our preference that cases be disposed of on the merits whenever practicable. Because entry of a default judgment is an extreme sanction, the entry of such judgment is generally disfavored. In a close case doubts should be resolved in favor of setting aside the default and reaching a decision on the merits." (cleaned up)). "[T]he decision to vacate a default judgment is left to the sound discretion of the [district] court." *Mrs. Ressler's Food Prods.*, 675 F. App'x at 137–38.

**III.    Discussion**

Defendant moves to set aside the default judgment the Court entered against it under Rule 60(b). Defendant claims that Plaintiffs would not be unfairly prejudiced, that they have a meritorious defense because the Collective Bargaining Agreement ("CBA") was expired as of April 30, 2017, and that Defendant's conduct was not culpable. (Doc. No. 52 at 5–9.) The Court addresses each factor in turn below.

   *A. Prejudice*

Plaintiffs bear the burden of showing that they would be prejudiced if the Court were to

set aside default judgment by "demonstrating that [their] claim would be materially impaired because of the loss of evidence, an increased potential for fraud or collusion, substantial reliance on the entry of default, or other substantial factors." *Sunoco, Inc.*, 300 F.R.D. at 256 (cleaned up); *Crespo*, 2021 WL 2550649, at *3. "Delays in [a plaintiff's] potential recovery or potential expenses incurred from litigating the matter on the merits do not constitute the kind of prejudice the Court should consider in deciding whether to set aside an entry of default, and having to litigate an action on the merits rather than proceed by default does not constitute prejudice toward a plaintiff." *Allied World Ins. Co. v. Perdomo Indus. LLC*, Civil Action No. 19-2467, 2019 WL 5966725, at *4 (E.D. Pa. Nov. 13, 2019) (cleaned up); *see also Sunoco, Inc.*, 300 F.R.D. at 256 (cleaned up); *Crespo*, 2021 WL 2550649, at *3.

Here, Plaintiffs have not argued that they would be prejudiced if we set aside the default judgment. (*See generally* Doc. No. 53-1 (solely addressing whether Defendant has a defense on the merits).) Accordingly, this factor weighs in favor of setting aside the default judgment. *See Sunoco, Inc.*, 300 F.R.D. at 256 ("Sunoco has not asserted that it would be prejudiced if we set aside the default judgments. Consequently, we conclude that this factor weighs in favor of setting aside the default judgments."); *Crespo*, 2021 WL 2550649, at *3 ("In this case, Plaintiff has not asserted he would be prejudiced in any way by the setting aside of this default judgment. Accordingly, this Court concludes that this factor weighs in favor of Defendants.").

### B. Meritorious Defense

Next, the Court considers whether Defendant has a meritorious defense. "The showing of a meritorious defense is accomplished when allegations of defendant's answer, if established on trial, would constitute a complete defense to the action." *Sunoco, Inc.*, 300 F.R.D. at 257; *see also Mrs. Ressler's Food Prods.*, 675 F. App'x at 140. "[D]efendants seeking to vacate a default

judgment must 'allege specific facts beyond denials or conclusionary statements.'" *Mrs. Ressler's Food Prods.*, 675 F. App'x at 141 (citation omitted); *see also Sunoco, Inc.*, 300 F.R.D. at 257 ("It is not enough for Defendants to simply deny the factual allegations in the Complaint. Rather, Defendants must allege facts, which, if established, would enable them to prevail in the action."). This standard "is more stringent than normally required for an answer to a complaint for it requires that a defendant set forth with some specificity the grounds for his defense." *Mrs. Ressler's Food Prods.*, 675 F. App'x at 141 (cleaned up). Nonetheless, "[a] defendant does not have to prove beyond a shadow of a doubt that it will win at trial, as it is sufficient for the defendant to show that its defense is not facially unmeritorious." *Allied World Ins. Co.*, 2019 WL 5966725, at *5 (cleaned up).

Here, Defendant has not alleged any facts that could support or constitute a meritorious defense. Defendant claims that there was no operative contract during the time frame at issue in this case but does not plead any facts suggesting that it terminated the CBA. Rather, Defendant relies solely on the contractual language from the 2016 CBA to support its position that the CBA automatically terminated on its expiration date of April 30, 2017. (*See, e.g.*, Doc. No. 52 at 7.) Plaintiffs counter that the CBA continued year-to-year because neither party notified the other party of an intent to terminate the agreement. At bottom, the parties disagree over how to interpret the CBA's termination provision (and, therefore, whether the CBA was terminated) and, specifically, whether the CBA contained a so-called "evergreen" or "survival" clause. The termination provision states:

> This agreement shall be binding upon both parties hereunto, as well as upon their respective principals, and upon the respective successors and assign of said parties and their principals, for the period beginning May 1, 2014 and ending at midnight of April 30, 2017, without change or modification except as hereinafter specifically provided, ***and thereafter from year to year***, unless

>each party hereto shall notify the other in writing at least ninety (90) days prior to the expiration of the term, or of any extended term, of this Agreement of an intention to change or amend any of the provisions of this Agreement upon expiration of its term or of any extended term thereof.  Such notice shall be served by certified mail post marked not less than ninety (90) days prior to such expiration date.
>
>Should either party give notice to the other as aforesaid, then, within thirty (30) days after the mailing of said notice, representatives of the Association and of the LDC shall meet to discuss, negotiate, and agree upon such changes.  If no agreement as to such changes is arrived at before the expiration of the term, of this Agreement, then the whole of this Agreement shall be considered terminated upon the expiration of the term, or of the then current extension of the term of this Agreement, unless extended by mutual agreement in writing of the parties hereto.
>
>This agreement shall expire April 30, 2017.

(Doc. No. 52-1 at 2, Article XVI, Section 1 – Termination of Agreement (emphasis added).)

Courts in this Circuit "have long held that ordinary contract principles are to be used by courts when reviewing and interpreting collective bargaining agreements." *Einhorn v. Penn Jersey Building Materials, Inc.*, 739 F. App'x 97, 99 (3d Cir. 2018); *see also M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015) ("We interpret collective-bargaining agreements, including those establishing ERISA plans, according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy."). "Where the words of a contract are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *Tackett*, 574 U.S. at 435 (cleaned up).  "[W]hen contractual language is clear and unambiguous . . . , it is inappropriate to resort to extrinsic evidence to create an ambiguity where none exists." *Grove v. Johnson Controls, Inc.*, 694 F. App'x 864, 869 n.5 (3d Cir. 2017) (citing *Int'l Union v. Skinner*, 188 F.3d 130, 145–46 (3d Cir. 1999)).

The Court finds that the language in the CBA's termination clause is clear and unambiguous: the CBA continues year-to-year after the April 30, 2017 expiration date unless a party provides written notice of its intent to change the agreement. The plain meaning of the word "change" encompasses termination—for example, a change in employment status could mean that an employee was terminated. Without question, termination of the CBA would constitute a change to the CBA. Further, Defendant's contention that the CBA was automatically terminated on April 30, 2017 renders the clause "and thereafter from year to year" meaningless.[2]

Because a plain reading of the CBA shows that the CBA continued "thereafter from year to year" and because Defendant has not alleged any facts indicating that it had provided notice that it was terminating or otherwise changing the agreement,[3] the Court cannot conclude that Defendant has established a meritorious defense.[4] This factor weighs against setting aside the

---

[2] Nowhere in Defendant's brief does Defendant address the "thereafter from year to year" language; rather, it simply ignores the language, without providing a basis for doing so.

[3] The Court also notes that Defendant has not attached a proposed answer to its motion to set aside the default judgment nor otherwise provided the Court with a proposed defense. *See Action Adjustment Serv., Inc. v. Heenan*, Civil Action No.: 20-cv-2032, 2021 WL 3015412, at *9 (E.D. Pa. June 2, 2021) ("not[ing] that [the defendant] attaches no proposed answer to her motion to set aside the default judgment, nor does she otherwise attempt to put any proposed answer before the Court" and citing a case for the proposition that "facts constituting a meritorious defense are normally derived from the defendant's answer").

[4] And, although neither party raised the issue in their briefing, courts have repeatedly held that termination is not a valid defense to a suit brought by third-party beneficiary funds for unpaid benefit contributions under § 515 of ERISA. Specifically, § 515 of ERISA "limits the defenses that an employer can invoke against a third-party beneficiary to a collective bargaining agreement." *Int'l Brotherhood of Elec. Workers Local Union No. 380 v. State Elec.*, Civil Action No. 04-2610, 2006 WL 2228863, at *4 (E.D. Pa. Aug. 3, 2006) (citing *Agathos v. Starlite Motel*, 977 F.2d 1500, 1505 (3d Cir. 1992)). "[T]he Third Circuit recognizes only three defenses that an employer may assert against employee benefit funds seeking to recover contributions: (1) that the fund contributions themselves are illegal; (2) that the collective bargaining agreement is void *ab initio*; and (3) that the employees have decertified the union as its bargaining representative." *Id.* (citing *Agathos*, 977 F.2d at 1505). "With respect to the defense of termination, the only possible *Starlite* defense is the second one—that the collective bargaining agreement is void *ab initio*. The defense of termination, though, is one of voidability of the contract, not that the contract is void *ab initio*." *Id.* (cleaned up) (holding that so long as there was a dispute between the

11

default judgment.[5]

### C. *Culpable Conduct*

Third, the Court must consider whether the default judgment was the result of Defendant's culpable conduct. "In considering a defendant's culpability, i.e., whether its conduct was excusable, courts apply the standard of 'willfulness' or 'bad faith.' 'Willfulness' or 'bad faith' means 'more than mere negligence' but can be satisfied with less than 'knowing disregard.'" *Mrs. Ressler's Food Prods.*, 675 F. App'x at 142 (citations omitted).

Plaintiffs do not address whether Defendant's conduct was culpable in their brief. And although Defendant argues generally that its conduct was not culpable because it retained counsel and counsel filed the instant motion (*see* Doc. No. 52 at 9), this fails to address whether Defendant's conduct was culpable *with respect to entry of the default judgment*, which occurred a year ago, well before Defendant retained counsel or raised any arguments before this Court (*see id.*). Significantly, Defendant has not argued that it was unaware of the suit, that it was not properly served, or that it did not receive notice of the show cause hearing. Defendant has not

---

employer and union "over whether the Agreement was terminated, [the employer] was barred from raising termination as a defense against the Funds"). Therefore, to the extent that Defendant seeks to use the alleged termination of the CBA as a defense against the *Funds* (not just the Union and Contractors Association, which were parties to the CBA), it cannot do so. *Cf. id.* ("[T]he Funds are still entitled to summary judgment with respect to whether State's purported termination affected its obligations to the Funds; the mere fact that the termination is in dispute means that the State cannot raise it as a defense against the Funds.").

[5] The Court also notes that Defendant's conduct cuts against Defendant's position that it believed the CBA had terminated on August 30, 2017. (*See* Doc. No. 1-1 (October 2019 settlement agreement between Plaintiffs and Defendant in a separate action, 18-3607, involving unpaid contributions from July 1, 2016 to March 31, 2018 and April 1, 2018 to April 30, 2019); *id.* ("In addition, Miniscalco agrees to pay any and all unpaid benefit fund contributions applicable to work performed May 1, 2019 through July 31, 2019 and interest in accordance with the [CBA] and applicable law."); *see also* Doc. No. 53-1 at 6 ("Miniscalco acknowledged in the settlement agreement resolving the 2018 litigation that it was obligated to make benefit fund contributions for work performed through July 31, 2019 and did in fact make such payments.").)

provided any justification for its failure to respond to the suit and its failure to appear at the show cause hearing. For these reasons, the Court finds that this factor weighs against setting aside default judgment. *See Crespo*, 2021 WL 2550649, at *4 ("Instantly, the record is clear that Defendant Marshall was personally served by certified mail on January 8, 2021. Defendant Marshall did not make contact with this Court until May 2021. Defendant Marshall offers no explanation for this delay. Accordingly, this factor weighs in favor of Plaintiff."). *Cf. Trustees of Nat'l Elec. Benefit Fund v. Mirarchi Bros., Inc.*, Civil Action No. 21-4399-KSM, 2021 WL 5835976, at *3–4 (E.D. Pa. Dec. 8, 2021) ("Here, Defendant failed to answer, appear, or plead in response to the summons and complaint and only appeared on the eve of the Show Cause Hearing, after Plaintiffs made further efforts to get Defendant to respond to the suit. Defendant argues that its failure to respond was 'inadvertent,' but it has not argued that it was unaware of the suit or that its failure to respond was otherwise accidental. . . . This conduct is both culpable and inexcusable, and there is no question that it caused the default. Accordingly, this factor also weighs in favor of not setting aside the default.").

### D. *Alternative Sanctions*

Last, the Court considers whether alternative sanctions would be effective. Neither party substantively addresses this issue in their briefs. (*See* Doc. Nos. 52, 53.) Defendant merely states that "any sanctions are inappropriate." (Doc. No. 53 at 9.) The Court finds this factor also weighs against setting aside the default judgment. *See Greco v. SubGallagher Investment Tr.*, Civil Action No. 19-2922, 2020 WL 4347369, at *6 (E.D. Pa. July 29, 2020) (finding the factor weighs against setting aside default judgment where the defendants "offer[ed] no alternative sanctions" and "instead . . . argue[d] there should be none").

* * *

On balance, the Court finds that the factors weigh against setting aside the default judgment.

## IV. Conclusion

Defendant's motion to set aside default judgment is denied. An appropriate Order follows.